HEIRS OF MARTÍN RODRÍGUEZ QUIÑONES, ETC., Plaintiffs and Appellants, *v.* HEIRS OF RAMÓN MORÁN, ETC., Defendants and Appellees.

No. 12635.   Decided May 3, 1962.

*Benjamín Ortiz* for appellants.   *Celestino Iriarte, F. Fernández Cuyar,* and *H. González Blanes* for appellees.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Santana Becerra and Mr. Justice Rigau.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Sometime in 1929, Facunda Córdova Quiñones filed in the former District Court of San Juan a petition of utility and necessity requesting authorization to sell at public auction six rural properties held in common by her and her nine minor children under her patria potestas. The purpose of requesting such authorization was that there were past-due debts amounting to more than $24,000, and that demand to pay had been made on the petitioner without her being able to pay them off for lack of funds. Some of the properties were encumbered by mortgages and others were subject to notices of attachment. Owing to the economic depression prevailing in Puerto Rico at that time, it was impossible for the petitioner to obtain credit for the cultivation of those farms. The creditors agreed to reduce their credits substantially if the properties were sold to pay off the debts. One of the creditors had already filed a complaint for recovery of money against the widow and her children, and there was a strong possibility that they be forced into involuntary bankruptcy.

The petition for judicial authorization was verified by the petitioner and her four children over 14 years of age and notice thereof was given to the district attorney. The hearing was held before the late magistrate Domingo Sepúlveda, and the petition together with the stenographic record were referred to the district attorney who submitted a written report stating that he had no objection to the request. Judge Sepúlveda having taken his vacation without deciding the case, the petitioner by motion submitted the petition to another judge of the same court, Pablo Berga, for consideration and determination, "inasmuch as the documentary and oral evidence is attached to the record from which he may learn

the details of the case." That magistrate entered an order on July 19, 1929, decreeing the sale of the said real properties for the minimum price of $75 per cuerda, and an order was issued to the marshal directing compliance with the said order.

The marshal set the sale for August 13, 1929 by means of edicts which were published in the newspaper "La Democracia." The sale not having been held because no bidders appeared on that day, the marshal set the same for the second time for September 9, 1929 at petitioner's request. No bidders appeared either on this date and again it was not held and the order was returned to the clerk of the court.

The facts which followed are correctly related by the appellees as follows:

"On December 2, 1929, the petitioner filed a motion which was verified by her attorney Luis Muñoz Morales, alleging that she was absent from the district and requesting a second sale on the ground that the previous one had not been held because no bidders had appeared and that the minimum price for the entire property be fixed at $15,000. (This amount represented and approximate price of $50 per cuerda.) It was alleged that an agreement had been made with Ramón Morán at a meeting of creditors held November 2, 1929, at which widow Facunda Córdova was present, assisted by her attorney Luis Muñoz Morales, whereby Ramón Morán would purchase all the properties and the shares of the Federal Bank for the price of $15,400, which amount, together with the sum of $5,382.82 realized from the liquidation of certain tobacco belonging to the predecessor, which was in the hands of Prudencio González, would be applied to pay off all the debts, leaving for the heirs a balance of $615.92 which the creditors would increase to $1,000 for delivery to the widow, as representative of the heirs, in exchange for the right of homestead which she waived.

"The hearing of that motion was held on the 9th and 13th days of December 1929. Facunda Córdova appeared and testified at the hearing which was continued on December 13, 1929, and also her children, Alejandro, age 19; Eulogia,

age 20; Asunción, age 18; and Benedicta, age 15. The petition together with the stenographic record were referred to district attorney Domingo Massari who informed on December 20, 1929 that he had no objection to reducing the auction price in the manner and for the price proposed or for whichever price the court might deem proper.

"Under date of December 20, 1929, the court granted authorization to sell at public auction the six properties for the minimum price of fifteen thousand dollars ($15,000) in all and $400 for the shares of the Federal Bank. An order having been issued to the marshal, the latter set the sale of the properties and the shares of the Federal Bank for January 12, 1930, and on that day he adjudicated to Ramón Morán the six properties for $15,000 and the shares of the Federal Bank for $400. The purchaser withheld $11,608.15 from the sum of $15,400, the proceeds of the sale, in order to pay off the mortgages and interest accrued thereon of the Federal Bank, Schluter & Co., and Pilar Zayas, the taxes due the Insular Treasury up to December 30, 1929, and their credits. All of these credits are recognized in the order of the court of December 20, 1929, with the exception of the mortgage of the Federal Bank which amounted with interest thereon, to $6,930.62 and on the date of the sale to $7,137.15, the difference consisting in the interest accrued on the said mortgage from the date on which they were liquidated at the meeting of creditors to the day of the sale, which the marshal made clear at the sale.

"The deed of judicial sale was executed in favor of purchaser Ramón Morán ten years later, May 3, 1940, before Notary José E. Díaz, under No. 36 of his protocol." (Brief for Appellees, pp. 2–4.)

In 1948, the heirs of Facunda Córdova and of her husband, Martín Rodríguez Quiñones, filed an action against the heirs of Ramón Morán to revendicate the six properties involved in the petition of utility and necessity to which we have already referred, alleging different grounds of nullity of such petition.

The amended complaint was answered and after numerous incidents which we need not relate the superior court

finally entered judgment on March 21, 1958 dismissing the complaint.

The present appeal was taken from said judgment, assigning the commission of the following error:

"The San Juan Part of the Superior Court erred in holding that the proceeding of judicial authorization of sale of property of minors was valid and operative, in view of the fact that the following irregularities were committed:

"(a) The district attorney did not appear personally at the hearing of the petition for judicial authorization.

"(b) There was no proper expert evidence on the value of the properties.

"(c) Even assuming that Morán, who testified on the minimum price which could be obtained for the property, had been an expert, he was the purchaser at the sale despite his disability to be a purchaser.

"(d) The judge who granted the authorization did not preside at the hearing of the case.

"(e) The marshal increased on his account the amount of a certain credit to be deducted from the price of the sale.

"(f) The minors did not intervene at a private meeting at which an agreement was reached as to the selling price of the property, which agreement was decisive in the judicial decision of the sale.

"(g) The credits were not duly established."

We believe that the nonappearance of the district attorney at the hearing of the petition for judicial authorization does not warrant by itself the annulment of the petition in this case, especially in the absence of fraud or of prejudice to the interests of the minors. The appellants admit that this question was decided adversely to them in the case of *Lókpez* v. *Fernández*, 61 P.R.R. 503. In that case we said: "The excuse that in the lower court the practice has prevailed of the district attorney never appearing at the hearing of these cases, limiting himself to the making of a written report on the basis of the transcript of the evidence, might be sustained as an exception and in defense and protection of

orders issued in those cases wherein the record discloses that evidence was introduced to prove the facts alleged in the petition and which showed the necessity and utility of the authorization prayed for.  Although such an omission would merit and would be the object of our  censure,  being  an isolated error, it would not be sufficient to serve as grounds for an action of nullity.  We say this in answer to the fear expressed by the lower court that if the present suit is successful, thousands of cases could be annulled in which the district attorneys of said courts, following the established custom and practice, did not appear at the hearings.  Actually it may be shown that the intervention of the district attorney was effective, although he did not appear at the hearing ... And even when in other cases the district attorney did not appear at the hearing and limited himself to rendering a report approving the authorization on the ground that it was justified by the evidence, said evidence being included in the transcript, this also would not be sufficient grounds for nullity."   (Pages 538–39.)

■ We are asked, however, to reverse that ruling.  If we consider that in this case the petition was made in 1929, or some 14 years before the decision in the *Lókpez* case, and that at that time the prevailing practice of the district attorneys was not to appear at the hearing of proceedings on judicial authorization for the sale of property of minors, the exception established in favor of those cases in which the record discloses that evidence was introduced to prove the facts alleged in the petition and which showed the necessity and utility of the authorization prayed for, seems fair and reasonable.  In the case at bar there was such evidence, and there is nothing in the record to show that the nonintervention of the district attorney at the hearing injured the rights of the minors.  See *Costa* v. *Piazza,* 51 P.R.R. 667.

■ It is alleged as a vice of nullity, that there was no evidence on the appraisal of the property for tax purposes.

nor expert evidence on its value. However, evidence was introduced at the first hearing on the demands made to Facunda Córdova widow of Rodríguez, mother of the appellants, by the Treasurer of Puerto Rico, to pay the taxes due on the properties. Also, two witnesses testified on the market value of the said properties, appraising them at $75 per cuerda of land. Two other witnesses testified at the second hearing on the value of the properties. The agreement reached by the creditors at a private meeting held with widow Facunda Córdova and one of her children over 14 years of age, was also introduced in evidence. That meeting took place after the two public sales were not held for lack of bidders. The price was reduced to $15,000 in all after the creditors reduced their credits to 50 per cent and to an additional 30 per cent in order that there would be something left for the widow and her children. The widow and her four children of full age testified at the second hearing. After the district attorney rendered his report raising no objection to the reduction of the minimum price for the public auction, the court fixed the price at which the properties were sold. There was substantial compliance with the law.

Another alleged ground of nullity is that Morán, the purchaser at the sale, testified as an expert despite the fact that he could not acquire by purchase properties publicly sold pursuant to the provisions of subd. 4 of § 1348 of the Civil Code, 31 L.P.R.A. § 3773.[1]

Irrespective of whether the prohibition to purchase which governs for judges and experts applies only to government property, as maintained by the appellees, we are convinced

---

[1] Section 1348 of the Civil Code provides:

"§ 3773. Persons who cannot acquire by purchase

"The following persons can not acquire by purchase, even at public or judicial auction, neither in person nor by an agent:

. . . . . . . . . . .

"4. Public officials, the property of the Commonwealth of Puerto Rico, municipalities, towns, and also of public institutions, the administration of which has been entrusted to them." 31 L.P.R.A. § 3773.

that Morán did not testify as an expert, wherefore we need not pass upon this question. Morán identified the agreement of the creditors to reduce substantially their credits against the heirs by the sum of $10,200, and his offer to pay $15,000 for the properties and $400 for the shares of the Federal Bank in the understanding that if any bidder offered more than that amount, such amount would remain for the benefit of the heirs. He expressed his opinion that if the properties were not sold at public auction, the properties of the heirs would be insufficient to pay the debts and that there was the risk that such would be the case because one of the creditors had already sued the heirs for collection of his credit. Upon being questioned by the judge, he answered that he believed that no one would offer $15,000 for the properties, although it was possible; that in his opinion the properties depreciated somewhat after the cyclone, but that he had not seen them since. Hence, on the date of the hearing Morán was not acquainted with the condition of the properties and, therefore, he could hardly be considered an expert appraiser of the properties in question.

The alleged vice that the judge who granted the judicial authorization did not intervene at the hearing of the case is without merit. It is true that the first hearing was held before Judge Domingo Sepúlveda and that because he went on vacation the petitioners requested Judge Berga to enter the corresponding order on the basis of the record, the transcript of the evidence, and the district attorney's report, and that the said magistrate did so. However, in view of the fact that the two sales were not held because no bidders appeared, another hearing was held before Judge Berga at which evidence was heard on the necessity and utility of the authorization requested. That magistrate entered the final order on the basis of the evidence heard at both hearings, in pursuance of which the properties were auctioned. The alleged ground of nullity is therefore untenable.

The marshal did not increase on his own account, as contended by the appellants, the amount of a certain credit to be deducted from the price of the sale. On November 2, 1929, when the agreement with the creditors was signed, the mortgage credit of the Federal Bank and the interest thereon amounted to $6,930.62. However, on the date of the judicial sale that credit and interest thereon amounted to $7,137.15, that is, that credit had earned interest in the meantime amounting to $206.53. In the court's order authorizing the sale of the properties of the minors there appear, among others, and as a complete credit which had not been offset, the mortgage credit in favor of the Federal Bank, which had, of course, been liquidated on the date the case was heard. In one of the whereases of that order it was stated that request had been made to the effect that the bidder to whom the bid were awarded and to whom the properties were adjudicated would assume the payment on his own account of the mortgages which encumbered the same, retaining the amount thereof, and which, according to the statement of the credits, included that of the Federal Bank for $6,930.62. In the dispositive part of the said order the bidder to whom the bid might be awarded was authorized "to retain in his possession the amount of the specified mortgage credits, the payment of which he shall assume..." The purchaser retained in his possession the principal of the mortgage credit of the Federal Bank and the interest thereon until the date of the sale. Our attention is not invited to the fact that the purchaser retained any sum in excess of the said credit and the interest thereon, or that the liquidation of the interest is erroneous. Hence, the alleged irregularity, if any, would not produce the nullity of the proceeding.

It is likewise unimportant that the minors, with the exception of one of them, did not participate at the meeting of creditors together with their mother. In fact, no agreement reached at that meeting bound the real property of the

minors. It was the court which would definitively decide on the necessity and utility of the sale of their property.

Lastly, we say that the allegation that the credits were not established is also without merit. In the record of necessity and utility there is sufficient evidence, documentary as well as oral, of each and every one of the credits specified in the petition. On the other hand, the order of the court directing the sale of the properties of the minors authorized the purchaser to retain only the amount of the mortgage credits which were duly evidenced by certifications of the Registry of Property, and that the difference be deposited in court subject to further orders.

The error assigned not having been committed, the judgment of the Superior Court will be affirmed.